IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHELLE SHA LEE RICHARDSON,

        Plaintiff,

        v.                                CASE NO.  15-3276-SAC-DJW

SALINE COUNTY SHERIFF'S DEPARTMENT,
ADVANCED CORRECTIONAL HEALTH CARE,
BETH KOMAREK,

        Defendants.


## NOTICE AND ORDER TO SHOW CAUSE

Plaintiff Michelle Richardson is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

## I.  Nature of the Matter before the Court

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed a Complaint (Doc. 1), alleging the following.  During her detention at the Saline County Jail, Plaintiff experienced some serious symptoms of mental illness.  On March 19, 2015, May 3, 2015, August 17, 2015, and September 29, 2015, Plaintiff spoke with the supervising nurse for Advanced Correctional Health Care, Beth Komarek, RN, about the mental illness symptoms Plaintiff was experiencing and what her options were for treatment.  RN Komarek continually told Plaintiff that the jail nursing staff was unable to provide Plaintiff with mental health assistance and that it was Plaintiff's attorney's responsibility to provide assistance for mental health issues.  While at the county jail, Plaintiff placed herself on sick call whenever her

symptoms were severe.  Plaintiff wrote her attorney about her mental health issues monthly from March until June.  Plaintiff made requests to Corporals Hoaga and Wallace about her concerns and filed grievances with Captain Melander on numerous occasions.

In July, Plaintiff was transported by jail staff to the local mental health clinic for diagnosis and treatment.  She was examined and prescribed medication by the clinic's psychologist.  Plaintiff was diagnosed with "Major Depression Disorder, Recurrent, Severe," and "Borderline Personality Disorder."

In August, the jail clinician prescribed Celexa for Plaintiff instead of the medication prescribed by the examining psychologist, even though Plaintiff consistently reported adverse side-effects from taking Celexa.  Plaintiff voiced her concerns about being prescribed Celexa, and on September 30, 2015, RN Komarek responded to Plaintiff's request regarding the side-effects of Celexa by discontinuing Plaintiff's medication and leaving her condition untreated for several weeks.  Plaintiff's mother contacted the ACLU of Kansas, who wrote a letter to the sheriff in Salina, but this came only after Plaintiff suffered "two hospitalizations, 21 stitches and several hours of humiliation and segregation." (Doc. 1 at 6.)  Plaintiff alleges that the jail's failure to fill and administer the medication prescribed has led to physical injuries, hospitalization and over 700 hours of lockdown.

Plaintiff also alleges that the jail failed to maintain the privacy of her health information.  Plaintiff alleges that although she had not signed a release, the jail nursing staff gave Plaintiff's mother information contained in Plaintiff's medical records.

As Count I of her Complaint, Plaintiff claims that "jailers" violated her right to appropriate mental health care when they were deliberately indifferent to her serious medical needs as a pretrial detainee.  As Count II, Plaintiff claims that "jail officials" refused to provide

her with the medication prescribed by the doctor they selected.  As Count III, Plaintiff claims that the "jail nursing staff" failed to maintain the privacy of Plaintiff's medical information. Plaintiff's request for relief seeks compensatory damages.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### 1.  *Improper Defendants*

Plaintiff names the Saline County Sheriff's Department as a defendant.  To impose § 1983 liability on the county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation.  *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 695 (1978)).  The Supreme Court explained that in *Monell* they decided "that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 387 (1989).  Plaintiff has pointed to no policy or deficiency in the training program used by the Saline County Sheriff's Department and no causal link between any such inadequacy and the allegedly unconstitutional acts or inactions of employees at the jail.

Plaintiff also names Advanced Correctional Health Care as a defendant.  In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell*."  *Wishneski v. Andrade*, 572 F. App'x 563, 567 (2014) (unpublished) (citations omitted).

This action is subject to dismissal as against Defendants Saline County Sheriff's Department and Advanced Correctional Health Care because Plaintiff has not alleged the requisite causative custom or policy.

## 2. *Eighth Amendment - Denial of Medical Care*

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.[1] "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

---

[1]  Plaintiff alleges that she was a pretrial detainee, rather than a convicted prisoner, at the time giving rise to the allegations in her Complaint. That distinction, however, at least with regard to Plaintiff's medical care claims, is not critical here. "Under the Fourteenth Amendment due process clause, 'pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).  Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment.  Plaintiff's allegations show that on March 19, 2015, May 3, 2015, August 17, 2015, and September 29, 2015, Plaintiff spoke with RN Komarek about the mental illness symptoms Plaintiff was experiencing and what her options were for treatment.  In July, Plaintiff was transported by jail staff to the local mental health clinic for diagnosis and treatment.  She was examined and prescribed medication by the clinic's psychologist.  In August, the jail clinician prescribed Celexa for Plaintiff instead of the medication prescribed by the examining psychologist.  When Plaintiff consistently reported adverse side-effects from taking Celexa, RN Komarek discontinued Plaintiff's medication.

A complaint alleging that plaintiff was not given plaintiff's desired medication, but was instead given other medications, "amounts to merely a disagreement with [the doctor's] medical judgment concerning the most appropriate treatment."  *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the doctor's medical judgment in treating a condition with a certain medication rather than others); *Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) (unpublished) (where appropriate non-narcotic medication was offered as an alternative to the narcotic medication prescribed prior to plaintiff's incarceration, a constitutional

violation was not established even though plaintiff disagreed with the treatment decisions made by prison staff); *Carter v. Troutt*, 175 F. App'x 950 (10th Cir. 2006) (unpublished) (finding no Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the inmate who missed follow-up appointment for treatment and refused to be examined unless he was prescribed the pain medication he wanted); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.").

Plaintiff also alleges that RN Komarek's discontinuation of the Celexa in response to Plaintiff's reported side-effects, left Plaintiff's condition untreated for several weeks. Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff's allegations of denial of medical care and delay in treatment are subject to dismissal for failure to state a claim. Plaintiff's allegations of delay in treatment do not allege deliberate indifference resulting in substantial harm. Plaintiff's allegations indicate that she has been furnished medical care during the relevant time frame. They also indicate that her claims

amount to a difference of opinion with the treatments she has been provided by medical staff. Plaintiff's allegations are nothing more than a lay person's disagreement with the medical treatment of her symptoms by medical professionals.  Such allegations do not rise to the level of a claim of cruel and unusual punishment under the Eighth Amendment; and are, at most, grounds for a negligence or malpractice claim in state court.

### 3. *Privacy of Medical Information*

Plaintiff must allege the violation of a right secured by the Constitution and laws of the United States to state a claim under § 1983.  "[T]he Supreme Court has recognized a constitutional right to information privacy under the Fourteenth Amendment, *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); and the Tenth Circuit Court of Appeals 'has repeatedly interpreted . . . *Whalen* as creating a right to privacy in the non-disclosure of personal information' including confidential medical information."  *Keltner v. Bartz*, No. 13-3022-SAC, 2013 WL 761157, at *3 (Feb. 27, 2013) (quoting *Herring v. Kennan*, 218 F.3d 1171, 1175 (10th Cir. 2000), *cert. denied*, 534 U.S. 840 (2001)).  However, prisoners "retain only those rights that 'are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.'"  *Keltner*, 2013 WL 761157, at *3 (citations omitted).

Plaintiff alleges that the "jail nursing staff" gave Plaintiff's mother information contained in Plaintiff's medical records. Plaintiff has not alleged facts showing that the nursing staff acted with an improper motive or with no legitimate penological purpose.  *See Howard v. Douglas County Jail*, 2009 WL 2985678, at *3 (Sept. 15, 2009) (citations omitted). Although prisoners are entitled to a certain amount of privacy in their medical records, Plaintiff has failed to provide enough information for the Court to determine whether she has stated a claim for a violation of this right.  Plaintiff does not explain who on the "nursing staff" disclosed the

information, what information was disclosed, how Plaintiff is aware it was disclosed, and whether or not the nursing staff had a legitimate penological reason for disclosing the information when he or she disclosed it.  Plaintiff will be given leave to amend this claim.

### 4. Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Plaintiff's Complaint refers to "the jail," "jailers," "nursing staff," or "jail officials" as violating her constitutional rights.  Any Amended Complaint filed by Plaintiff should name each individual defendant as directly involved in each scenario and describe the acts or inactions of that person which allegedly violated her constitutional rights.

## VI.  Response and/or Amended Complaint Required

For the reasons stated herein, it appears that this action is subject to dismissal in its entirety for failure to state a claim.  Plaintiff is therefore required to show good cause why her Complaint (Doc. 1) should not be dismissed for the reasons stated herein.  The failure to file a timely, specific response waives de novo review by the District Judge, *see Thomas v. Arn*, 474

U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Col. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999).

Plaintiff is also given the opportunity to file a complete and proper Amended Complaint upon court-approved forms that cures all the deficiencies discussed herein.[2]  Plaintiff is given time to file a complete and proper Amended Complaint in which she (1) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court, and (2) alleges sufficient facts to show personal participation by each named defendant.  If Plaintiff does not file an Amended Complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted **thirty (30) days** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint (Doc. 1) should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that within the same thirty-day period Plaintiff may file a complete and proper Amended Complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to plaintiff.

---

[2]  In order to add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete Amended Complaint.  *See* Fed. R. Civ. P. 15.  An Amended Complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the Amended Complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the Amended Complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (15-3276-SAC-DJW) at the top of the first page of her Amended Complaint and she must name every defendant in the caption of the Amended Complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the complaint, where she must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas on this 27th day of July, 2016.**


**<u>s/ David J. Waxse</u>**

**David J. Waxse**
**U. S. Magistrate Judge**